Patrick M. Flatley
United States Bankruptcy Judge

Dated: Thursday, September 19, 2013 5:45:47 PM

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JOHN P. AMAN and VERONICA J. AMAN, | ) ) ) | Case No. 11-1353 |
| | ) | |
| Debtors. | ) | Chapter 13 |
| _____ | ) ) | |
| THE HUNTINGTON NATIONAL BANK, WEST UNION BANK, and FREEDOM BANK, INC., | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 11-98 |
| | ) | |
| JOHN P. AMAN and VERONICA J. AMAN, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

The Huntington National Bank ("HNB"), West Union Bank, and Freedom Bank (collectively "Plaintiffs") seek summary judgment on their complaint to except $300,000 from John P. Aman and Veronica J. Aman's ("Debtors") discharge under 11 U.S.C. § 523(a)(2), (4), and (6). The Plaintiffs contend that grounds exist to render this debt nondischargeable because Mr. Aman engaged in fraud, defalcation, and embezzlement over a seven-year period. The Debtors oppose summary judgment on the basis that genuine issues of material fact exist. For the reasons stated herein, the court will deny the Plaintiffs' motion for summary judgment.

1

# I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is only appropriate if the movant demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment must make a prima facie case by showing: first, the apparent absence of any genuine dispute of material fact; and second, the movant's entitlement to judgment as a matter of law on the basis of undisputed facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the burden of proof to establish that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Demonstrating an absence of any genuine dispute as to any material fact satisfies this burden. *Id.* at 323. Material facts are those necessary to establish the elements of the cause of action. *Anderson*, 477 U.S. at 248. Thus, the existence of a factual dispute is material — thereby precluding summary judgment — only if the disputed fact is determinative of the outcome under applicable law. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). A movant is entitled to judgment as a matter of law if "the record as a whole could not lead a rational trier of fact to find for the non-movant." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (citation omitted); *see also Anderson*, 477 U.S. at 248.

If the moving party shows that there is no genuine dispute of material fact, the nonmoving party must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. *Celotex Corp.*, 477 U.S. at 322-23. The court is required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Shaw,* 13 F.3d at 798. However, the court's role is not "to weigh the evidence and determine the truth of the matter [but to] determine whether there is a need for a trial." *Anderson*, 477 U.S. at 249-50. Nor should the court make credibility determinations. *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). If no genuine issue of material fact exists, the court has a duty to prevent claims and defenses not supported in fact from proceeding to trial. *Celotex Corp.*, 477 U.S. at 317, 323-24.

# II. BACKGROUND

Ms. Aman had a close relationship with her great uncle, Peter L. Olean. For a number of years, Mr. Olean visited the Amans three to six nights per week. In 2000, Mr. Olean designated Mr. Aman as one of his attorneys-in-fact because of his relationship with Ms. Aman. Under the durable power of attorney, Mr. Aman had numerous powers: He had the right to, among other

things, draw checks on, and withdraw all or part of Mr. Olean's savings accounts; to demand, sue for and recover for, any and all sums of money, debts, rents, royalties, accounts, insurance, interest and dividends that became due; to sell, lease, pledge, encumber, convey, transfer, assign, and dispose of property, and to make, execute, acknowledge, and deliver any instruments required to consummate such transaction; to sell, assign, cash, convert or transfer any stocks, notes, or securities; and "generally to do and perform all things necessary to carry out the powers" provided for under the durable power of attorney.  Soon after Mr. Olean executed the durable power of attorney, he began noticing withdrawals from his bank accounts.  Upon review of his monthly bank statements, Mr. Olean discovered that Mr. Aman was writing checks on his accounts.  Mr. Olean told Mr. Aman to stop withdrawing funds from his accounts, but Mr. Aman continued writing checks in Mr. Olean's name.  Although these unauthorized withdraws continued for many years, Mr. Olean did not revoke his power of attorney because of his beloved niece.

In 2001, Mr. Aman joined HNB as its senior treasury management officer.  Sometime during Mr. Aman's employment with HNB, Mr. Olean loaned Mr. Aman stock certificates for 5,335 shares of Merck and 17,206 shares of Mylan Laboratories.  Mr. Olean loaned him the stock certificates as collateral to borrow from HNB.  During Mr. Aman's employment with HNB, twelve HNB loans were taken out in Mr. Olean's name; Mr. Olean signed three of the loans,[1] and Mr. Aman signed nine in his capacity as Mr. Olean's power of attorney.  At least eight of the HNB's loans were collateralized with Mr. Olean's Merck and Mylan stock.  All of HNB's loans were paid in full.

In 2005, Mr. Aman left HNB to join West Union Bank as its senior vice president of its Clarksburg, West Virginia branch office.  During the first two years there, Mr. Aman took out twenty-nine loans in the name of Mr. Olean and signed each one as "John Aman P.O.A."  The loan documents indicate that the purpose of the loans were to "pay off Huntington Bank," "to pay contractor," and for the "renewal of loan."  The vast majority of the West Union Bank loans were unsecured; the few loans that were secured were collateralized by a "Pete Dye Membership Certificate."  Mr. Olean was not aware of these loans until 2009.  All of the West Union Bank loans were paid in full.

---

[1] The Plaintiffs suggest that Mr. Aman may have had Mr. Olean sign a blank page and then somehow transcribed his signature onto the three loan documents.  Mr. Olean acknowledged his signature on three of the loan documents, but could not recall ever signing the loan documents.

3

On or about May 15 and May 17, 2007, Mr. Aman took out two loans in the name of Mr. Olean from Freedom Bank in the amounts of $245,054.89 and $114,313.36 — a total of $359,368.25. The loan documents reflect that Mr. Olean was the borrower and Mr. Aman signed as "John Aman P.O.A." The stated purpose of the loans was "debt consolidation." Both loans were collateralized by Mr. Olean's stock: 17,208 shares of Mylan Laboratories stock and 6,335 shares of Merck stock. A few days after Mr. Aman took out these loans, Mr. Olean revoked Mr. Aman's power of attorney. By 2009, both of the Freedom Bank loans were in default. Freedom Bank sold the collateral and applied the proceeds to the outstanding debt obligation; the proceeds, however, did not satisfy the outstanding obligation. Freedom Bank notified Mr. Olean by letter that he should contact the bank to make arrangements to pay the $55,444 deficiency.

In 2010, Mr. Olean filed a lawsuit against the Plaintiffs in the Circuit Court of Monogalia County, West Virginia. He brought four causes of action against the banks: fraud, negligence, conversion, and vicarious liability. The Plaintiffs each filed a third-party complaint against Mr. Aman. HNB and West Union Bank's third-party complaint asserted the same two-counts: first, for contribution from Mr. Aman if the banks were held liable to Mr. Olean; and second, they alleged that Mr. Aman fraudulently misrepresented his authority under his durable power of attorney, they relied upon his misrepresentations by approving the loans, they were damaged by having to defend Mr. Olean's lawsuit, and any potential judgment against them was sustained as a proximate consequence of Mr. Aman's fraudulent misrepresentations. Freedom Bank's third-party complaint, without the same specificity as HNB and West Union Bank, also asserted causes of action for fraud and contribution if Freedom Bank was held liable to Mr. Olean.

During the state court proceeding, the Plaintiffs deposed the Debtors. Mr. Aman asserted his Fifth Amendment privilege in response to questions relating to the money he borrowed from the Plaintiffs in his capacity as Mr. Olean's power of attorney. Ms. Aman similarly asserted her spousal privilege in response relating to her husband's loans from the Plaintiffs. On July 27, 2011, while the state court proceeding was pending, the Debtors filed for bankruptcy relief under Chapter 13 of the Bankruptcy Code. On October 7, 2011, the Plaintiffs filed this adversary proceeding and also individually filed proofs of claim in the Debtors' bankruptcy case. This adversary proceeding was stayed to permit the resolution of the state court proceeding above. The Plaintiffs ultimately settled with Mr. Olean for $300,000 and each obtained a default

4

judgment against Mr. Aman: HNB was awarded $108,333.33; West Union Bank was awarded $108,333.34; and Freedom Bank was awarded $83,333.33.[2]

On February 26, 2013, this court held a pretrial conference and subsequently entered a scheduling order whereby the parties were provided with sixty days for discovery. The court held another pretrial hearing on June 10, 2013, where the parties indicated that discovery was complete and they were ready to file dispositive motions. The motion for summary judgment before the court relies on four depositions that were developed in the state court action, the Plaintiffs' loan documents, the durable power of attorney, and Freedom Bank's letter to Mr. Olean. The Debtors only offered two affidavits as evidence. The affidavits are both approximately one page and provide, other than identification information, that the Debtors were each advised by an attorney to assert the Fifth Amendment and spousal privilege in the state court case. The Debtors presented no other evidence in opposition to the pending motion.

### III. DISCUSSION

The Plaintiffs argue that their motion for summary judgment is ripe for disposition because there are no genuine issues of material fact. They claim that all the material facts necessary to adjudicate their motion were of record in the state court case. The Plaintiffs contend that the Debtors cannot introduce "new evidence"[3] in this proceeding because they elected to invoke the Fifth Amendment and spousal privilege in the state court case. Relying on *SEC v. Benson*, 657 F. Supp. 1122 (S.D.N.Y. 1987) and *Leonard v. Coolidge (In re Nat'l Audit Def. Network*, 367 B.R. 207 (Bankr. D. Nev. 2007), the Plaintiffs urge the court to bar the Debtors from introducing any evidence in this proceeding because a non-moving party cannot introduce evidence in response to a motion for summary judgment where that party previously asserted the Fifth Amendment. In response, the Debtors highlight that *Benson* and *In re Nat'l Audi Def. Network* dealt with circumstances where the non-moving party raised the Fifth Amendment in the same case, whereas here the Debtors have yet to assert any privileges. Moreover, the Debtors argue that since there was not a judicial ruling made in the state court

---

[2] The court is relying on the Plaintiffs representations of the amounts of the respective default judgment awards. Upon review of the docket in this proceeding, the court could not find the default judgment awards that were entered in state court.

[3] The court assumes that the Plaintiffs consider new evidence to be any evidence not proffered by the Debtors in the state court case.

5

case regarding the validity of the invoked privileges, this court should not penalize the Debtors for merely asserting a privilege in a previous case.

At this stage of the proceeding, the court declines from deciding whether the Debtors may introduce new evidence in this case because the Debtors have not attempted to offer any evidence. The Debtors' response to the Plaintiffs motion for summary judgment does not attach any depositions, substantive affidavits,[4] or answers to interrogatories challenging the Plaintiffs factual allegations. In fact, the Debtors' response to the Plaintiffs' motion for summary judgment does not contest any of the Plaintiffs factual allegations; rather, the Debtors seemingly rely on the record as developed by the Plaintiffs to show that genuine disputes of material fact exist.

Turning to the merits of the Plaintiffs nondischargeability action, they argue that each of their default judgments against Mr. Aman is nondischargeable because neither Mr. Olean nor the durable power of attorney authorized Mr. Aman to obtain loans from the Plaintiffs. The Plaintiffs contend that these default judgments are nondischargeable under any one of the three following grounds: first, Mr. Aman violated § 523(a)(2)(A) because he obtained the subject loans by fraudulently representing to the Plaintiffs that he had the authority to do so; second, Mr. Aman violated § 523(a)(4) because he embezzled money from the Plaintiffs, and also obtained money from them by acts of fraud or defalcation while acting in a fiduciary capacity; and third, Mr. Aman violated § 523(a)(6) because he intentionally and maliciously injured the Plaintiffs by obtaining loans he knew Mr. Olean had not authorized. The Plaintiffs bear the burden to demonstrate by a preponderance of the evidence that the Debtors debt is nondischargeable under one of these sections. *Grogan v. Garner*, 498 U.S. 279, 291 (1991) (holding that the standard of proof for the dischargeability exceptions in § 523(a) is the preponderance-of-the-evidence standard). Exceptions to discharge under § 523 are construed narrowly in favor of providing debtors a fresh start. *See Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 130 (4th Cir. 1999).

**A. Section 523(a)(2)(A)**

The Plaintiffs argue that Mr. Aman fraudulently misrepresented his authority to obtain loans on behalf of Mr. Olean; they relied on his professed authority in approving the subject

---

[4] The two affidavits submitted by the Debtors do not contest any of the facts alleged by the Plaintiffs. Other than identification information, the affidavits only provide that an attorney told the Debtors to assert the Fifth Amendment and spousal privilege in the state court case.

6

loans; they were harmed by having to pay Mr. Olean $300,000 in the state court action; and they justifiably relied on Mr. Aman's representations because his power of attorney was "facially valid." The Plaintiffs also contend that they are entitled to judgment against Ms. Aman because she obtained a benefit from the loans and she knew of her husband's conduct. The Debtors counter that the record shows that Mr. Olean was aware of Mr. Aman's conduct and voluntarily provided him with the collateral to secure the loans. Regarding Ms. Aman, the Debtors allege that § 523(a)(2)(A) is inapplicable because she made no representation to the Plaintiffs.

Section 523(a)(2)(A) excepts from discharge any debt "for money . . . to the extent obtained, by — (A) false pretenses, a false representation, or actual fraud . . . ." Congress enacted § 523(a)(2)(A) "to protect creditors who were tricked by debtors into loaning them money or giving them property, services, or credit through fraudulent means." *Nunnery v. Rountree (In re Rountree)*, 478 F.3d 215, 219-20 (4th Cir. 2007). Section 523(a)(2)(A) does not except any debt incurred as a result of fraud; for a debt to fall within this exception, the debtor must use "fraudulent means to *obtain* money, property, services, or credit." *Id.* at 219 (emphasis added).

The terms "false pretenses," "false representation," and "actual fraud" are interpreted according to the common understanding of those terms at the time of § 523(a)(2)(A)'s enactment. *E.g., Field v. Mans*, 516 U.S. 59, 69 (1995) ("The operative terms in § 523(a)(2)(A) . . . carry the acquired meaning of terms of art. They are common-law terms, and . . . they imply elements that the common law has defined them to include."). At the time of their promulgation, the prevailing common-law definition of these terms was set forth in the *Restatement (Second) of Torts* (1976), which was published shortly before Congress passed the 1978 Bankruptcy Act. *Field*, 516 U.S. at 70-72; *Biondo*, 180 F.3d at 134 ("[W]e will follow the Supreme Court's lead and look to the Restatement to determine the elements required to prove that claim."). Relying on the *Restatement of Torts* and the Supreme Court's survey of the dominant consensus of common-law jurisdictions in 1978, the Court of Appeals for the Fourth Circuit found that a plaintiff must prove four elements to satisfy § 523(a)(2)(A): "(1) a fraudulent misrepresentation; (2) that induces another to act or refrain from acting; (3) causing harm to the plaintiff; and (4) the plaintiff's justifiable reliance on the misrepresentation." *In re Biondo*, 180 F.3d at 134.

In this case, the Plaintiffs have failed to establish that there is no genuine issue of material fact as to whether Mr. Aman fraudulently misrepresented his authority to take out loans

7

on Mr. Olean's behalf. Whether Mr. Aman had such authority is material because it is determinative of the Plaintiffs' cause of action under § 523(a)(2)(A). Relying on Mr. Olean's deposition from the state court case and the durable power of attorney, the Plaintiffs argue that Mr. Aman did not have the authority to take out the subject loans and therefore he fraudulently misrepresented to them that he had the authority to obtain the loans. The Plaintiffs cite to portions of Mr. Olean's deposition where he testified that he was unaware of Mr. Aman's borrowing and that he did not authorize Mr. Aman to borrow money on his behalf unless he was incapacitated. But Mr. Olean's recollection of the subject loans is inconsistent. Mr. Olean testified that he voluntarily loaned his Mylan and Merck stock to Mr. Aman for the purpose of using it as collateral to take out the HNB loans. Notably, in response to whether Mr. Olean knew Mr. Aman was going to use the stock as collateral for the HNB loans, Mr. Olean testified that "he [Mr. Aman] said he was going to use it for that" and that "he told me he was going to use it for collateral at Huntington Bank." If Mr. Olean did not authorize Mr. Aman to take out loans, it is quite peculiar for Mr. Olean to then loan him approximately $371,000[5] in stock to use as collateral for the HNB loans.

The terms of Mr. Olean's durable power of attorney also do not resolve Mr. Aman's authority to obtain loans on Mr. Olean's behalf. The Plaintiffs argue that the durable power of attorney does not provide Mr. Aman with the authority to borrow in Mr. Olean's name. But paragraph six of the power of attorney provides that Mr. Aman:

> may act as my [Mr. Olean] attorney, for me in my name and in my behalf: To sell, lease, pledge, encumber, convey, transfer, assign or otherwise deal in and dispose of my property, real and personal, and to make, execute, seal, acknowledge, and deliver any deeds, contracts, leases, assignments, releases or other instruments required to consummate any of said transaction.

By its terms, this paragraph authorizes Mr. Aman to encumber Mr. Olean's personal property and to execute any such instrument required to consummate the transaction. An encumbrance is a "claim or liability that is attached to property . . . such as a lien or mortgage." *Black's Law Dictionary* 568 (8th 2004). And an "instrument" is a "written legal document that defines rights, duties, entitlements, or liabilities, such as a contract, will, *promissory note*, or share certificate."

---

[5] The record does not reflect the fair market value of Mr. Olean's stock when he loaned it to Mr. Aman. The court crudely estimates the value at $371,000 based upon the sale of the stock on April 27, 2009. Of course, the value of the stock may have been vastly different at the time Mr. Olean loaned it to Mr. Aman.

*Id.* at 813 (emphasis added). Without determining definitively, the court observes that paragraph six may empower Mr. Aman to encumber Mr. Olean's personal property and to execute promissory notes on his behalf. Based upon Mr. Olean's contradictory testimony and paragraph six, the court finds that a material factual dispute exists as to whether Mr. Aman had the authority to borrow on Mr. Olean's behalf. Thus, the Plaintiffs have not satisfied their burden in showing the absence of a genuine dispute of material fact. *See Anderson*, 477 U.S. at 248.

The court also finds that the Plaintiffs have not alleged or established sufficient facts showing that § 523(a)(2)(A) applies to Ms. Aman. Section 523(a)(2)(A) requires "the debtor to have *obtained* money, property, services, or credit through her fraud or use false pretenses." *In re Roundtree*, 478 F.3d at 219 (emphasis added). The debts the Plaintiffs seek this court to find nondischargeable are default judgments entered against Mr. Aman. The pleadings before the court do not indicate that a judgment was entered against Ms. Aman, or that she individually obtained money from the Plaintiffs prepetition. The court therefore is unsure what "debt" under § 523(a)(2)(A) the Plaintiffs seek this court to find nondischargeable against Ms. Aman. Moreover, the record is devoid of any representations — let alone fraudulent misrepresentations — that Ms. Aman made to either the Plaintiffs or Mr. Olean. Without providing a scintilla of evidence that she ever even made representations to the Plaintiffs, the Plaintiffs have not demonstrated that § 523(a)(2)(A) is applicable to Ms. Aman.

**B. Section 523(a)(4)**

Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." § 523(a)(4). Importantly, "while acting in a fiduciary capacity" only qualifies "fraud or defalcation"; acts of embezzlement or larceny do not require the concomitant condition of the act while the individual is a fiduciary. Therefore, an examination of defalcation or fraud is only necessary if the Plaintiffs first demonstrate that the debt arose while Mr. Aman was acting in a fiduciary capacity. *See In re Parker*, 264 B.R. 685, 700 (B.A.P. 10th Cir. 2001) ("The existence of a fiduciary relationship is a threshold issue under § 523(a)(4).").

**1. Fiduciary Capacity**

The Plaintiffs argue that Mr. Aman owed a fiduciary duty to Mr. Olean and to two of the three Plaintiff banks. The Plaintiffs contend that Mr. Aman was placed in a position of ascendancy over Mr. Olean because he was designated as Mr. Olean's attorney-in-fact and had

9

substantial experience in financial matters.  The Plaintiffs allege that Mr. Olean placed special trust in Mr. Aman because of his financial knowledge and the relationship Mr. Olean had with Ms. Aman.  The Plaintiffs also assert that Mr. Aman acted in a fiduciary capacity to HNB and West Union Bank because he was employed as an officer at both banks.  In response, the Debtors argue that Mr. Aman did not retain a position of ascendancy over Mr. Olean because Mr. Olean was competent to handle his financial affairs, reviewed his bank statements, and was aware of Mr. Aman's financial transactions.

The definition of "fiduciary" for purposes of § 523(a)(4) is controlled by federal common law. *Harrell v. Merchant's Express Money Order Co. (In re Harrell)*, No. 98–1728, 1999 WL 150278, at *2–3 (4th Cir. Mar. 19, 1999).  Under the federal common law, the term "fiduciary" is limited to instances involving express or technical trusts. *Id.*  In an express or technical trust, "[t]he trustee's obligations must have been imposed prior to, rather than by virtue of, any claimed misappropriation of funds . . . ." *Id.* at *3.  In general, the concept of a "fiduciary duty" under § 523(a)(4) applies only to technical or express trusts; it does not generally apply to fiduciary duties implied by law from the contract.  *In re Bennett*, 989 F.2d 779, 784 (5th Cir.1983).  For instance, there is no cause of action under § 523(a)(4) based on the existence of a constructive or resulting trust because those types of trusts serve as remedies for another's breach of duty. *E.g., Guerra v. Fernandez–Rocha (In re Fernandez–Rocha)*, 451 F.3d 813, 816 (11th Cir. 2006) ("'[C]onstructive' or 'resulting' trusts, which generally serve as a remedy for some dereliction of duty in a confidential relationship, do not fall within the § 523(a)(4) exception 'because the act which created the debt simultaneously created the trust relationship.'") (citation omitted).  A technical or express trust requires there be a "fiduciary duty" with trust-type obligations that are imposed under statute or common law. *Bennett*, 989 F.2d at 785.  As explained by the Court of Appeals for the Seventh Circuit, a fiduciary relationship may be created when there is a "'difference in knowledge or power between the fiduciary and principal . . . which gives the former a position of ascendancy over the latter.'"  *O'Shea v. Frain (In re Frain)*, 230 F.3d 1014, 1017 (7th Cir. 2000) (citation omitted).  Under this test, a fiduciary relationship includes any relationship that calls for the imposition of the same high standard as a trust, such as "a lawyer-client relation, a director-shareholder relation, or a managing partner-limited partner relation" because all these relationships call for the principal to "'repose a special confidence in the fiduciary.'"  *Id*. (citation omitted).

10

Although the determination of whether a fiduciary duty exists to support a § 523(a)(4) cause of action is a question of federal law, "state law is relevant in determining whether a trust obligation exists." *Martinez v. Goodrich (In re Goodrich)*, No. 03–8172, 2004 WL 2758671, at *2 (Bankr. C.D. Ill. Oct. 20, 2004). "[T]he existence of a state statute or common law doctrine imposing trust-like obligations on a party may, at least in some circumstances, be sufficient to create a technical trust relationship for purposes of section 523(a)(4)." 4 *Collier on Bankruptcy* ¶ 523.10[1][d] (Alan N. Resnick & Henry J. Sommer, eds. 15th ed. rev. 2009). If such an obligation exists under state law, then "the court must look behind the provision to ascertain whether the relationship possesses the attributes required for the purposes of Section 523(a)(4)." *In re Goodrich*, 2004 WL 2758671, at *2; *see Texas Lottery Comm'n v. Tran (In re Tran)*, 151 F.3d 339, 342 (5th Cir. 1998) ("A state cannot magically transform ordinary agents, contractors, or sellers into fiduciaries by the simple incantation of the terms 'trust' or 'fiduciary.'"). Relationships demonstrating the requisite attributes have included an ambassador and the property of the ambassador's represented country, *Republic of Rwanda v. Uwimana (In re Uwimana)*, 274 F.3d 806 (4th Cir. 2001), a financial advisor committing fraud and found to be a fiduciary by default in a state court judgment, *Pahlavi v. Ansari (In re Pahlavi)*, 113 F.3d 17 (4th Cir. 1997), real estate agents handling closing funds, *Hamby v. St. Paul Mercury Indemnity Co.*, 217 F.2d 78 (4th Cir. 1954), attorneys handling client funds, *Andy Warhol Found. for Visual Arts, Inc. v. Hayes (In re Hayes)*, 183 F.3d 162 (2d Cir. 1999), a corporate officer and director mishandling corporate funds, *In re Burton*, 416 B.R. 539, 546 (Bankr. N.D.W. Va. 2009) and those acting under a power of attorney to an incompetent person, *Ostrum v. Porter (In re Porter)*, No. 03–118, 2008 WL 114914 (Bankr. N.D.W. Va. Jan. 10, 2008).

In *In re Porter*, this court considered whether an appointee of a durable power of attorney[6] acted in a "fiduciary capacity" to the grantor under § 523(a)(4). Following the Seventh Circuit, this court held that a fiduciary relationship exists under § 523(a)(4) when there is a

---

[6] In West Virginia, a power of attorney is "'an instrument granting someone authority to act as agent or attorney-in-fact for the grantor.'" *In re Richard P.*, No. 34751, 2010 WL 2723185 (W. Va. July 9, 2010) (quoting *Black's Law Dictionary* 1290 (9th ed. 2009)); *Napier v. Compton*, 210 W.Va. 594, 558 S.E.2d 593 (W. Va. 2001) ("'A power of attorney creates an agency and this establishes the fiduciary relationship which exists between a principal and agent.'") (citation omitted); *Frazier v. Steel & Tube Co.*, 132 S.E. 723, 724 (W. Va. 1926) ("'It is conceded that, as a general rule, a principal has the right to revoke a power of attorney at any time . . . .'") (citation omitted).

"'difference in knowledge or power between the fiduciary and principal . . . which gives the former a position of ascendancy over the latter.'" *In re Porter*, 2008 WL 114914, at *3 (quoting *In re Frain*, 230 F.3d at 1017). Employing this standard to the facts of that case, the court bifurcated when the attorney-in-fact was acting in a fiduciary capacity. When the grantor of the attorney-in-fact was competent and aware of the financial decisions being made on her behalf, the attorney-in-fact was not acting in a fiduciary capacity. *Id.* at *4. But when the grantor became incompetent, the attorney-in-fact enjoyed a position of ascendancy; consequently, the relationship metamorphosed such that the attorney-in-fact acted in a fiduciary capacity from the time of the incompetency.

Here, the Plaintiffs failed to demonstrate by a preponderance of the evidence that a fiduciary relationship existed between the Plaintiffs and Mr. Aman. The Plaintiffs mistakenly focus almost their entire argument on the relationship between Mr. Aman and Mr. Olean. The default judgments the Plaintiffs obtained against Mr. Aman — the debts they seek the court to find nondischargeable — are debts owed by Mr. Aman to the Plaintiffs. If Mr. Olean's estate was seeking a nondischargeability finding with respect to a judgment he obtained against Mr. Aman, an examination of their relationship would be necessary. But the court, for purposes of determining whether the Plaintiffs default judgments against Mr. Aman stemmed from "fraud or defalcation," is only concerned with whether he was acting in a fiduciary capacity with respect to the Plaintiffs.[7]   *See In re Bratt*, 489 B.R. 414, 425 (Bankr. D. Kan. 2013) ("Proving this exception [§ 523(a)(4)] requires demonstrating that a fiduciary relationship existed between the

---

[7] Although Mr. Aman and Mr. Olean's relationship is irrelevant in this § 523(a)(4) action, the court nonetheless finds that Mr. Aman did not act in a fiduciary capacity to Mr. Olean. *See Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1371 (10th Cir. 1996) ("Neither a general fiduciary duty of confidence, trust, loyalty, and good faith, . . . , nor an inequality between the parties' knowledge or bargaining power, . . ., is sufficient to establish a fiduciary relationship for purposes of dischargeability."). Similar to the facts of *In re Porter*, Mr. Olean monitored his financial affairs, reviewed bank statements, and confronted Mr. Aman about his withdrawals. The Plaintiffs provided no evidence suggesting that Mr. Olean was incompetent during the time Mr. Aman acted as his attorney-in-fact. In fact, Mr. Olean was aware that Mr. Aman was using his powers for his personal benefit. Mr. Olean had the right to object and revoke Mr. Aman's authority at any time. *Frazier v. Steel & Tube Co.*, 132 S.E. 723, 724 (W. Va. 1926) ("'It is conceded that, as a general rule, a principal has the right to revoke a power of attorney at any time . . .'"). Notably, Mr. Olean eventually did exercise this right in 2007 and revoked his durable power of attorney.

debtor and the objecting party and that the debtor committed the defalcation in the course of that fiduciary relationship.").

Regarding the relationship between the Plaintiffs and Mr. Aman, the Plaintiffs summarily conclude that Mr. Aman acted in a fiduciary capacity at HNB and West Union Bank because he was employed by them. The Plaintiffs offered no other details of Mr. Aman's corporate responsibilities other than his title: At HNB, Mr. Aman was the senior treasury management officer; at West Union Bank, he was the senior vice president of the Clarksburg branch. At this stage of the proceeding, the record does not reflect the existence of a technical or express trust, and the Plaintiffs provided no evidence suggesting that a state statute or common law doctrine imposed trust-like obligations on Mr. Aman.[8] Accordingly, the court cannot determine with Mr. Aman's working titles alone whether he was acting in a fiduciary capacity. Because the Plaintiffs failed to demonstrate that Mr. Aman was acting in a fiduciary capacity, the court does not need to consider whether the debt arose from fraud or defalcation.

**2. Embezzlement**

The Plaintiffs also assert that Debtors debts to them are nondischargeable on the ground of embezzlement under § 523(a)(4). The Plaintiffs argument that Mr. Aman embezzled funds from them is one sentence: "[T]he evidence here is that although Aman lawfully (albeit fraudulently) obtained the 43 loans from Plaintiff Banks, he thereafter fraudulently misappropriated the funds for his own use and without his principal's authority." The Plaintiffs also argue that Ms. Aman satisfies § 523(a)(4) because she was a "beneficiary of the misappropriated monies." The Debtors contend that the Plaintiffs have failed to show that the

---

[8] "The term 'officer' is not defined by the West Virginia Business Corporation Act, but, with regard to corporate law, 'the term refers esp. to a person elected or appointed by the board of directors to manage the daily operations of a corporation . . . .'" *In re Cross*, No. 9-1823, 2010 WL 3447850, at *2-3 (Bankr. N.D.W. Va. Aug., 27, 2010). The current record does not indicate whether Mr. Aman was appointed or elected by a board of directors, or whether he was named in the respective bank's by-laws as an officer. The distinction between Mr. Aman being an officer or employee is significant because an employer-employee "relationship does not generally entail the type of fiduciary duty contemplated by 11 U.S.C. § 523(a)(4)." *Id.* at *3. *Compare Grow Up Japan, Inc. v. Yoshida (In re Yoshida)*, No. 1–09–1415, 2010 Bankr.LEXIS 2502, at *15 (Bankr. E.D.N.Y. Aug. 23, 2010) ("[A]n employment relationship alone does not give rise to a fiduciary relationship for purposes of § 523(a)(4). Nor does the elevation of an employee to a managerial position bring into being a fiduciary relationship within the purview of § 523(a)(4)."), *with In re Burton*, 416 B.R. at 546 (holding that the "fiduciary relationship between a corporate officer and/or director to the corporation and its shareholders is a trust-type obligation that satisfies the fiduciary requirement of § 523(a)(4)").

13

Debtors embezzled funds because Mr. Olean was aware of Mr. Aman's loan transactions, and Ms. Aman could not have embezzled funds from the Plaintiffs because she was never entrusted with monies.

"Embezzlement" under § 523(a)(4) is defined as the "'fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come.'" *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998) (citation omitted). To establish embezzlement, the movant must demonstrate that "(1) the person was lawfully entrusted with property or property lawfully came into the hands of that person, and (2) the property was fraudulently appropriated." *In re Davis*, 262 B.R. 663, 671 (Bankr. E.D. Va. 2001). Fraudulent intent may be inferred from the surrounding facts and circumstances. *E.g.*, *In re Chwat*, 203 B.R. 242, 249 (Bankr. E.D. Va. 1996); *In re Allman*, 147 B.R. 122, 125 (Bankr. E.D. Va. 1992). In contrast, "larceny" occurs under § 523(a)(4) if "the debtor has wrongfully and with fraudulent intent taken property from its owner." *In re Rose*, 934 F.2d 901, 903 (7th Cir.1991). "Embezzlement" differs from "larceny" in that when money is embezzled, "the original taking of the property was lawful, or with the consent of the owner, while in larceny the felonious intent must have existed at the time of the taking." 4 *Collier on Bankruptcy* ¶ 523.10[2].

The Plaintiffs iterate throughout their motion for summary judgment that Mr. Aman unlawfully obtained the subject loans because he did not have the authority to obtain the loans on Mr. Olean's behalf. This line of argument fails to show that the original taking of the Plaintiffs property was lawful. Furthermore, the Plaintiffs argue that Mr. Aman "lawfully (albeit fraudulently) obtained the 43 loans from the Plaintiff Banks." This statement is oxymoronic: Mr. Aman legally perpetrated fraud against the Plaintiffs. Thus the Plaintiffs have failed to show that Mr. Aman legally received the loans and subsequently misappropriated those loans for his benefit with a fraudulent intent. Regarding Ms. Aman, the Plaintiffs have provided no evidence that Ms. Aman was ever entrusted with property of the Plaintiffs. She was not a party to any of the subject loan transactions between the Plaintiffs and Mr. Aman, and she did not take out loans from the Plaintiffs on her behalf. Accordingly, the court finds that the Plaintiffs have failed to demonstrate how the embezzlement exception to discharge under § 523(a)(2)(A) applies to the Debtors.

**C. Section 523(a)(6)**

The Plaintiffs assert that grounds exist under § 523(a)(6) to except their debts from discharge because Mr. Aman acts and resulting injury to them were deliberate and intentional. The Plaintiffs allege that Mr. Aman intentionally entered the loan transactions with full knowledge that Mr. Olean had not authorized the loans; they conclude that Mr. Aman therefore misled the Plaintiffs into thinking that the loans were for the benefit of Mr. Olean. The Plaintiffs contend that Mr. Aman, with thirty years of experience in the financial industry, knew that borrowing funds based on misrepresentations created a substantial certainty that harm would result. The Plaintiffs assert that Mr. Aman also acted with malice because he abused his power under the durable power of attorney and his employment position with HNB and West Union Bank. In response, the Debtors argue that the Plaintiffs have failed to show how any acts by Mr. Aman were malicious.

Section 523(a)(6) provides that a discharge in bankruptcy does not apply to any debt that arises from the "willful and malicious injury by the debtor to another entity or to the property of another entity." § 523(a)(6). The test is conjunctive — the debtor's conduct must be both willful and malicious. *E.g.*, *In re Miera*, 926 F.2d 741, 743 (8th Cir. 1991) (noting that willful and malicious are distinct elements of § 523(a)(6) exception to discharge). For a debt to be excepted from a debtor's discharge under 523(a)(6), "the plaintiff must prove three elements by a preponderance of the evidence: (1) that the defendant's actions caused an injury to the plaintiff's person or property, (2) that the defendant's actions were willful, and (3) that the defendant's actions were malicious." *In re Raeder*, 409 B.R. at 383.

Section 523(a)(6)'s exception from discharge is associated with the law of intentional torts, and conduct that is negligent or reckless remains dischargeable. *Kawaauhau v. Geiger*, 523 U.S. 57, 60 (1998). The acts done must be with the actual intent to cause injury. *Geiger*, 523 U.S. at 61 ("[N]ondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury.") (emphasis in original). An intentional act alone "does not necessarily mean that he acted willfully and maliciously for purposes of § 523(a)(6), *Duncan v. Duncan (In re Duncan)*, 448 F.3d 725, 728 (4th Cir. 2006). For an injury to be "willful," the debtor must actually intend to cause injury. This sort of intentional conduct includes those actions where the debtor knows the consequences flowing from the complaint acts

15

are certain, or are substantially certain to occur. *See Barclays American/Business Credit., Inc. v. Long (In re Long)*, 774 F.2d 875, 881 (8th Cir. 1985).

"Malicious" under § 523(a)(6) means that the debtor's act was committed "deliberately and intentionally in knowing disregard of the rights of another." *First Nat'l Bank v. Stanley (In re Stanley)*, 66 F.3d 664, 667 (4th Cir. 1995); *In re Walker*, 48 F.3d 1161, 1163-64 (11th Cir. 1995) ("As used in section 523(a)(6), malicious means wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.") (internal quotation marks and citation omitted). Debtors may act with malice even if they do not have "subjective ill will toward" and do not intend to injure their creditor. *In re Stanley*, 66 F.3d at 667. Because a debtor will rarely, if ever, admit to acting in a willful and malicious manner, those requirements may be inferred from the circumstances surrounding the injury at issue. *E.g.*, *St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003, 1010 (4th Cir. 1985) ("Implied malice, which may be shown by the acts and conduct of the debtor in the context of their surrounding circumstances, is sufficient under 11 U.S.C. § 523(a)(6).").

The Plaintiffs have not demonstrated that there is no genuine dispute as to whether Mr. Aman intentionally meant to harm the Plaintiffs when he obtained the subject loans. The Plaintiffs allege that Mr. Aman executed promissory notes he knew Mr. Olean did not authorize. But as the court noted above, a genuine issue of material fact exists as to whether Mr. Aman had the authority to take out the loans. Consequently, the court cannot determine if Mr. Amen knowingly misrepresented his authority to the Plaintiffs with the intent to cause them financial harm.[9]

---

[9] Even assuming Mr. Aman misrepresented his authority, the Plaintiffs have not presented any evidence that such conduct was directed towards harming the Plaintiffs rather than Mr. Olean. *See, e.g., In re Grasso*, No. 12-11063-MDC, 2013 WL 3404329, at * (Bankr. E.D. Pa. July 3, 2013) ("The Movant must prove that the Debtor acted with a substantial certainty that his conduct would harm the Movant. The Movant must also present evidence that establishes that the Debtor's intent was focused upon harming the Movant . . . ."); *In re Brown*, 442 B.R. 585, 620 (Bankr. E.D. Mich. 2011) ("[A]ctions that are calculated to benefit a debtor, with any harm to a plaintiff being a result of the debtor's 'reckless disregard for the plaintiff's economic interests,' are not malicious for purposes of § 523(a)(6)") (citation omitted); *In Re Nofziger*, 361 B.R. 236, 244 (Bankr. M.D. Fla. 2006) ("Therefore, in order to establish that a particular debt is nondischargeable, [under 523(a)(6)], at a minimum, the creditor must establish that the [debtor's] . . . act was directed at the creditor, not someone else."). Indeed, if Mr. Aman misrepresented his authority to the Plaintiffs, Mr. Olean stood to take the brunt of the consequences: Mr. Olean was the stated borrower on all the loans, $371,888 of his stock was sold when the Freedom Bank

## IV. CONCLUSION

For the above-stated reasons, the court will deny, without prejudice, the Plaintiffs' motion for summary judgment. A separate order will be entered pursuant to Fed. R. Bankr.P. 9021.

---

loans defaulted, and Freedom Bank threatened legal recourse against him if he did not pay the $55,444 deficiency.